**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

| | |
|---|---|
| EXECUTIVE DIRECTOR OF THE ]<br>OFFICE OF VERMONT HEALTH ]<br>ACCESS O/B/O FRANCIS CAREY, ]<br>        Plaintiff, ]<br>                    ]<br>     v. ]<br>                    ]<br>KATHLEEN SEBELIUS, SECRETARY ]<br>OF THE UNITED STATES ]<br>DEPARTMENT OF HEALTH AND ]<br>HUMAN SERVICES, ]<br>        Defendant. ] | Case No. 2:08-CV-168 |

**MEMORANDUM AND ORDER**

The Office of Vermont Health Access ("OVHA"), on behalf of Francis Carey, sought review of the Secretary of the United States Department of Health and Human Services' decision denying Carey Medicare Part A home health care coverage for intermittent skilled nursing services rendered from November 14, 2003 through March 2, 2005. The United States Magistrate Judge found the Administrative Law Judge's affirmation of the Secretary's decision to deny reimbursement for the medicare claims was contrary to law and unsupported by substantial evidence. The Magistrate Judge recommended that OVHA's motion to reverse be granted, and the Secretary's motion to affirm be denied, and the matter be remanded for further proceedings. For the reasons below, the Court adopts the Magistrate Judge's Report and Recommendation with a clarification that a Physician's Certification does not equate to an opinion. Rather, the

certification is a relevant factor to be assessed in conjunction with the entire record.  The Certification in this case was explained and supported by the entire record and in that context should have been afforded substantial weight.

I. **Factual Background**

The Magistrate Judges' Report and Recommendation described the factual background in detail, familiarity with which is assumed.  The Rutland Area Visiting Nurse Association ("RAVNA") provided home health services to Carey from November 14, 2003 through March 2, 2005.  RAVNA submitted multiple claims to Associated Hospital Services ("AHS", Medicare's fiscal intermediary) for reimbursement for these services.  These claims were denied.  OVHA, acting as Cary's subrogee, filed requests with AHS for a redetermination of the denial.  AHS denied these requests between January 13, 2006 and May 2, 2006 on the grounds that the services provided were not medically reasonable and necessary.

OVHA sought reconsideration from MAXIMUS Federal Services (a Medicare qualified independent contractor).  MAXIMUS affirmed the denial of coverage between August 30, 2006 and September 6, 2006. OVHA then requested a hearing before an Administrative Law Judge ("ALJ").  On June 7, 2007, the ALJ determined that OVHA was not entitled to reimbursement, finding that the home health services provided to Carey were not reasonable and necessary for the

treatment of Carey's conditions.  OVHA requested that the
Medicare Appeals Council ("MAC") review the ALJ decision, and on
June 18, 2008 MAC adopted the ALJ decision.  Having exhausted all
administrative remedies, OVHA filed a Complaint against the
Secretary on August 15, 2008.

Treatment notes for the relevant time period (November 2003-
March 2005) report that Carey was 81 years old, diagnosed with
Alzheimer's disease, ulcerative colitis, and vascular
insufficiency of the intestine.  Carey was incontinent, and had a
colostomy, a history of seizures, poor endurance, impaired vision
and hearing, experienced difficulties with chewing and
swallowing, and had memory loss to the point of requiring
supervision.  Cary required assistance on a daily basis, and was
on approximately eight different medications.

Nurse notes indicate that during this time period Carey had
issues with his colostomy, an incidence of probable seizure,
pneumonia, and overall declining health.  Daily living assistance
was provided by a private, non-skilled caregiver, and RAVNA
provided one home health nursing visit and multiple home health
aide visits during each respective service period between
November 14, 2003 and March 2, 2005.  These RAVNA visits were
documented with an Outcome and Assessment Information Set
("OASIS").

Dr. Jeffrey Wulfman, Carey's treating physician during this

time period, determined that Carey needed intermittent skilled nursing services.  Dr. Wulfman executed Home Health Certifications and Plans of Care (hereinafter Certifications) within two weeks of the beginning date of each service period.  He certified that Carey was under his care and that Carey required skilled nursing care.  These Certifications were based on RAVNA's Clinical Summaries for Recertification and the OASIS Assessments for each respective period.  The Certifications and Plans of Care contain personal information that is specific to Carey's condition and needs.  Medical records indicate that Dr. Wulfman did personally see Carey during the service periods and that no other Doctor other than Dr. Wulfman opined on Carey's condition.  Dr. Wulfman also prepared a retrospective Physician's Report.

**II. Discussion**

Under *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987), the Secretary's determination of whether services are reasonable and necessary under the Medicare Act must be based on substantial evidence and be in accordance with correct legal principles.  42 U.S.C. § 405(g).  "Substantial evidence is more than a mere scintillia.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gartmann v. Sec'y of United States Dept. of Health & Human Servs.*, 633 F. Supp. 671, 679 (E.D.N.Y. 1986).  "In determining whether

substantial evidence exists the reviewing court analyzes the record as a whole." *Bodnar v. Sec'y of Health & Human Servs.*, 903 F.2d 122, 126 (2d Cir. 1990). While the reviewing court must defer to the Secretary's supported findings of fact, it "is not bound by the Secretary's conclusions or interpretations of law, or an application of an incorrect legal standard." *Gartmann*, 633 F. Supp. at 679. And thus "before the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Id.* at 680.

The Medicare Act, 42 U.S.C. § 1395 et seq., establishes the federal program of health insurance for the elderly. *Connecticut Dept. of Social Servs. v. Leavitt*, 428 F.3d 138, 141 (2d Cir. 2005). Under the program, claimants hold the burden of proving entitlement to Medicare benefits. *Friedman v. Sec'y of Dept. of Health and Human Servs.*, 819 F.2d 42, 45 (2d Cir. 1987). And while physician's certification of the necessary 42 U.S.C. § 1395n(a)(2)(A) facts does not bind the Secretary to a finding of eligibility, *Bodnar*, 903 F.2d at 125, the remedial purpose of the Medicare Act does require that the Act be broadly construed. *Gartmann*, 633 F. Supp. at 679.

"The Medicare Statute unambiguously vests final authority in the Secretary . . . to determine whether a service is reasonable and necessary, and thus whether reimbursement for services should

5

be made." *Bodnar*, 903 F.2d at 125 (citing 42 U.S.C. § 1395ff(a); *Heckler v. Ringer*, 466 U.S. 602, 617 (1984)).  Under 42 U.S.C. § 1395y(a)(1)(A) the Secretary may not provide reimbursement for services that are "not reasonable and necessary for diagnosis or treatment of illness or injury."  *New York ex rel Holland v. Sullivan*, 927 F.2d 57, 58–59 (2d Cir. 1991).

Home health care services reimbursement is contingent on showing that the claimant meets the requirements of 42 C.F.R. § 409.42(a)-(d).  The disputed issue in Carey's case was whether he required intermittent skilled services in satisfaction of part (c)(1).  OVHA argued Carey qualified for coverage and that the Secretary's denial of coverage was not supported by substantial evidence and violated Medicare laws and regulations.  OVHA specifically argued that the Secretary erred in her finding that the services were "custodial" in nature, that Carey was clinically stable during the service periods, and that Carey's non-skilled caregiver adequately cared for Carey.

The ALJ determined that the home health services provided to Carey were not reasonable and necessary and thus were not covered by Medicare A.  The ALJ noted Carey's medical history and existing conditions, but concluded that care could have been and was provided safely and effectively by non-skilled individuals. The ALJ gave minimal weight to Dr. Wulfman's Certification and Physician's Report.

The Magistrate Judge recommended remanding for further proceedings. He found the ALJ erred in her application of the law with respect to its treatment of

(a) the Certifications and Report of Dr. Wulfman;

(b) the stability of Cary's medical condition during the relevant period; and

(c) the care provided by Carey's private, non-skilled caregiver.

**A. Treating Physician's Opinion**

The Magistrate Judge first concluded that the ALJ erred in the assessment of Dr. Wulfman's Certifications and his retrospective Report. Dr. Wulfman certified that Cary was under his care and that Carey required skilled nursing services. Dr. Wulfman also prepared a retrospective Physician's Report where he reported treating Carey for various conditions and stated that Carey "needed very intense daily care." However, the ALJ did not mention Dr. Wulfman's Certifications in her written decision, and mentioned the Report only to state that it constituted non-clinical evidence that was prepared after the dates of service at issue, and thus assigned it minimal probative value.

In finding error in the ALJ's treatment of the Certifications and the Report, the Magistrate Judge did not adopt the treating physician's rule. The Magistrate Judge acknowledged that the Second Circuit has left to the Secretary the initial

7

determination of the weight to be given to a treating physician's opinion in Medicare coverage determinations. *New York ex. rel Stein v. Sec'y of Health & Human Servs.*, 924 F.2d 431, 433–34 (2d Cir. 1991). Further, the Magistrate Judge stated that the Second Circuit has not explicitly decided whether the treating physician rule applies in Medicare cases. *Kaplan v. Leavitt*, 503 F. Supp. 2d 718, 723 (S.D.N.Y. 2007) (citing *Keefe v. Shalala*, 72 F.3d 1060, 1064 (2d Cir. 1995).

The Magistrate Judge noted, however, that the Second Circuit has indicated that there is a possibility that some version of the treating physician rule could apply. "[T]hough the considerations bearing on the weight to be accorded a treating physician's opinion are not necessarily identical in the disability and Medicare contexts, we would expect the Secretary to place significant reliance on the informed opinion of a treating physician and either to apply the treating physician rule, with its component of "some extra weight" to be accorded that opinion, . . . or to supply a reasoned basis, in conformity with statutory purposes, for declining to do so." *Holland*, 927 F.2d at 60 (quoting *Schisler v. Bowen* ("Schisler II"), 851 F.2d 43, 47 (2d Cir. 1988)). In *Dennis v. Shalala* the Court stated that "although the treating physician rule . . . had not yet been extended to determinations of Medicare Part A benefits, the Secretary should still attach significance to the 'detailed and

8

current opinion of a treating physician.'" No. 5-92-CV-210, 1994 WL 708166, at *3 (D. Vt. Mar. 4, 1994). Thus, caselaw requires ALJs to give some extra weight to a treating physician's opinion, or supply a reasoned basis for declining to do so. *Bergeron v. Shalalala*, 855 F. Supp. 665, 668 (D. Vt. Apr. 5, 1994).

The Secretary principally objects to the Magistrate Judge's Report and Recommendation on the grounds that he treated the Certifications as opinions and thus placed undue emphasis on Dr. Wulfman's Certifications. The Secretary asserts that the Magistrate Judge erred in concluding that the ALJ should have given "extra weight" to the Certifications or supplied a reason for declining to do so.

The Magistrate Judge determined that the ALJ had failed to consider and give adequate weight to the Certifications, the Report, and the medical record taken together. The Magistrate Judge did not find that certifications are equivalent to a treating physician's opinion, but instead concluded that certifications are a relevant part of the factual record when determining coverage. This Court agrees. In this case, the Certifications, Report, and medical record collectively reflect the doctor's sentiment that the services provided were reasonable and necessary. The ALJ failed to give "extra weight" to these components of the record that reflect Dr. Wulfman's contemporaneous or retrospective opinions and failed to supply

9

the necessary reasoned basis for not doing so.

The Certifications state that Dr. Wulfman was certifying that Carey was a patient under his care. Records also indicate that Dr. Wulfman did see Carey during the service period and the record reflects that no other doctor reported conflicting evidence on Carey's condition. And, while the OASIS assessments consist largely of boxes to be checked, the Clinical Summaries for Re-certification and the Certifications and Plans of Care contained information that was personal and specific to Carey's health conditions. Additionally, the nurses' notes and OASIS assessments support Dr. Wulfman's Certifications that a nurse was required to oversee and monitor Carey's care plan. The treating nurses noted a decline in Carey's overall condition during the service periods. The ALJ failed to mention this evidence in the administrative hearing and her written decision.

*Cardinal v. Thompson*, No. 2:00-CV-349 (D. Vt. Oct. 26, 2001), a case cited by the Secretary, is clearly distinguishable. In *Cardinal* the treating physician checked a box indicating that it was difficult for the claimant to spend time out of the home. *Id.* at *12. The Appeals Council and the ALJ declined to give controlling weight to this Certification. *Id.* "This Court found that the Appeals Council acted properly, given the fact that the physician provided no explanation or basis for his conclusion, and there was contrary evidence in the record." Id. at **12-13.

In this case Carey's certified plan of care was specifically tailored to him and there was no evidence on the record contrary to Dr. Wulfman's Certifications and Report. In this context the ALJ failed to give sufficient weight to Dr. Wulfman's Certifications and Report.

**B. The ALJ Assessment of Carey's Condition**

The Magistrate Judge determined that the ALJ improperly relied upon her own independent opinion regarding whether skilled services were needed, based on her ex post facto interpretation of Carey's vital signs during the service period. An ALJ cannot substitute his or her own unsupported judgment for that of a physician. *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986). Inconsistent with the record, the ALJ decision stated that Carey's colostomy site was healthy, his vital signs were normal, his treatment regimen was static, and no complications arose proximate to the date of service at issue. The ALJ's characterization of Carey's condition as "clinically stable" is not supported by substantial evidence, and the ALJ's statements that "no complications arose" and that the colostomy site was "healthy" contradict the record. This Court has held that "the fact that skilled care has stabilized a claimant's health does not render that level of care unnecessary." *Bergeron v. Shalala*, 855 F.Supp 665, 669 (D. Vt. 1994) (quoting *Folland*, 1992 WL 295230 at *7). Thus, it was improper for the ALJ to

11

apply a retrospective analysis to the question of Carey's stability. *Folland*, 1992 WL 295230 at *7.

**C. ALJ's Reliance on Non-Skilled Caregiver's Provision of Services to Claimant**

The ALJ found Carey did not "require" skilled services, since a non-skilled caregiver adequately cared for Carey during service periods. The Second Circuit has held that in determining whether a Medicare claimant requires skilled nursing care (rather than "custodial care") the decision should rest on "a common sense, non-technical consideration of the patient's condition as a whole." *Friedman v. Sec'y of Dept. of Health and Human Servs.*, 819 F.2d 42, 45 (2d Cir. 1987). Further, the Social Security Act is to be liberally construed in favor of beneficiaries. *Id.* The Magistrate Judge found that rather than looking at Carey's condition as a whole, the ALJ improperly focused on the individual services provided by a non-skilled caregiver.

Under the Secretary's regulations, to qualify as a skilled service, it "must be so inherently complex that it can be safely and effectively performed only by, or under the supervision of, professional or technical personnel." 42 C.F.R. § 409.32(a). The Magistrate Judge notes that a patient whose condition does not ordinarily require skilled services, may require skilled services due to special medical complications. 42 C.F.R. § 409.32(b); *Sawyer v. Sullivan*, No. 90-62, 1991 WL 350049, at *3

(D. Vt. Apr. 17, 1991).  Also, "the fact that a skilled nursing service can be or is taught to the beneficiary or to the beneficiary's family or friends does not negate the skilled aspect of the service when performed by the nurse."  42 C.F.R. § 409.44(b)(1)(iii).  The overall management and evaluation of a patient's treatment plan can also be a skilled service.  42 C.F.R. § 409.33(a)(1); *Colton v. Sec'y HHS* 1991 WL 350050, at *5 (D. Vt. 1992).  The Second Circuit had stated the "[o]verall management and evaluation of a care plan may be considered a skilled service, and the aggregate of services provided by non-professionals may require the involvement of technical or professional personnel to evaluate and manage their provision." *Hurley v. Bowen*, 857 F.2d 907, 911 (2d Cir. 1988).

The record demonstrates that in accordance with Dr. Wulfman's Certifications and Plans of Care, a nurse managed and evaluated Carey's care.  The ALJ improperly focused on the individual services provided by a non-skilled caregiver rather than Carey's condition as a whole.  The nurse's role in managing and evaluating care given to Carey was vital, and the ALJ's failure to consider that function was in error.

The Report and Recommendation of the United States Magistrate Judge was filed December 14, 2009.  Defendant's objection was filed December 30, 2009 with a response to the objection filed by Plaintiff on January 16, 2010.

13

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Perez-Rubio v. Wyckoff*, 718 F.Supp. 217, 227 (S.D.N.Y. 1989). The district judge may "accept, reject, or modify, in whole or in part, the magistrate's proposed findings and recommendations." *Id.*

After careful review of the file, the Magistrate Judge's Report and Recommendation and the objections, this Court ADOPTS the Magistrate Judge's recommendations in full.

The plaintiff's motion for order reversing the Secretary's Decision (Paper 11) is **GRANTED.** The defendant's motion for order affirming decision of HHS (Paper 17) is **DENIED.** This matter is remanded for further proceedings.

Dated at Burlington, in the District of Vermont, this 15th day of March, 2010.

>                /s/ William K. Sessions III
>                William K. Sessions III
>                Chief Judge